IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| INDIANA GREEN PARTY, *et al.* ) | |
| ) | |
| Plaintiffs, ) | Case No. 1:22-cv-00518-JRS-DML |
| ) | |
| v. ) | Judge: James R. Sweeney II |
| ) | |
| HOLLI SULLIVAN, in her official capacity ) | Magistrate Judge: Debra |
| as Indiana Secretary of State, ) | McVicker Lynch |
| ) | |
| Defendant. ) | |

### PLAINTIFFS' RESPONSE IN OPPOSITION
### TO DEFENDANT'S MOTION TO DISMISS

Plaintiffs Indiana Green Party, Libertarian Party of Indiana, John Shearer, George Wolfe, David Wetterer, A.B. Brand, Evan McMahon, Mark Rutherford, Andrew Horning, Ken Tucker and Adam Muehlhausen (collectively, "Plaintiffs") respectfully submit this response in opposition to the Motion to Dismiss that Defendant Holli Sullivan ("the Secretary") filed pursuant to Federal Rule of Civil Procedure 12(b)(6) on May 18, 2022. (ECF No. 17.)

### INTRODUCTION

Plaintiffs allege that several provisions of the Indiana Election Code (the "Challenged Provisions"),[1] as applied in combination, impose severe burdens and prohibitive costs on independent candidates ("Independents"), minor political parties ("Minor Parties") and candidates from those parties seeking ballot access. (Comp. (ECF No. 1) ¶¶ 25-80.) These burdensome requirements deprive Plaintiffs of their First and Fourteenth Amendment rights as voters, candidates, and political parties. (Comp. ¶¶ 81-93.)

---

[1] Plaintiffs specifically challenge the following provisions as applied in combination: (1) the two percent nomination petition signature requirement (IC 3-8-6-3: 2); (2) the in-person, hand-signed paper nomination petition requirement (IC 3-8-6-6); (3) the June 30 deadline for submitting nomination petitions to each county voter registration office (IC 3-8-6-10(a),(b)); and (4) the two percent requirement for retaining ballot access (IC 3-8-4-1) and the lack of any procedure for Independents to retain ballot access. (Compl. ¶ 95.)

1

Rather than directly addressing the factual allegations in the Complaint, the Secretary broadly asserts that Plaintiffs' claims should be dismissed simply because other challenges to the Indiana Election Code have failed. Under the Secretary's theory, the fact that a statute was previously upheld means that it can never again be challenged. The Secretary is incorrect. The cases on which the Secretary relies were not decided in a vacuum, but within the context of their particular facts and the legal theories asserted. Consequently, these cases do not foreclose a plaintiff from asserting claims based on new facts and new legal theories, as Plaintiffs do here. Federal courts, including the Seventh Circuit, have repeatedly recognized this fundamental principle.

The Secretary's assertion that the Challenged Provisions "are constitutional as a matter of law" is therefore plainly insufficient to support dismissal. (Br. in Supp. of Defs. Mot. to Dismiss (ECF No. 18) ("Br.") at 1.) Not only is the Secretary wrong – the evidence will show that the Challenged Provisions are unconstitutional as applied in combination – but also, the Secretary's assertion goes to the merits of Plaintiffs' claims, not to the sufficiency of their pleading. Indeed, the Secretary fails to assert a *pleading* deficiency with respect to any aspect of Plaintiffs' claims. The Secretary thus confuses the procedural posture of this case: a motion to dismiss under Rule 12(b)(6) tests whether a plaintiffs' allegations, if proven, are sufficient to state a claim, not whether either party is entitled to judgment as a matter of law, which is a determination that must be made based on a complete evidentiary record. *See* Fed. R. Civ. P. 56(a) ("The court shall grant *summary judgment* if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.") (emphasis added). Because the Secretary's arguments on the merits cannot serve as the basis for dismissal, her motion must be denied.

**ARGUMENT**

### I. The Secretary Fails to Provide Grounds for Dismissal Under Rule 12(b)(6).

"The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to decide the merits." *Triad Associates v. Chicago Housing Authority*, 892 F.2d 583, 586 (7th Cir. 1989). As the Seventh Circuit has explained:

> [w]hen a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

*Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). To survive a motion to dismiss under Rule 12(b)(6), therefore, a complaint merely needs to "provide enough factual information to 'state a claim to relief that is plausible on its face' and 'raise a right to relief above the speculative level.'" *Camasta v. Jos. A. Banks Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).

Accordingly, a defendant seeking dismissal under Rule 12(b)(6) must address the specific allegations that support a plaintiff's claims and demonstrate that they are insufficient, even if proven, to establish any right to relief. *See id*. The Secretary makes no attempt to do so here. Instead, the Secretary devotes one solitary sentence to a summary of Plaintiffs' allegations, (Br. at 3), and otherwise ignores them entirely. Dismissal is not available under these circumstances.

#### A. Plaintiffs Have Adequately Pled Their Constitutional Claims.

Plaintiffs have adequately pled violations of their First and Fourteenth Amendment rights by alleging: (a) Indiana's obsolete, 133-year-old nomination petition procedure imposes severe burdens on Independents and Minor Parties (Comp. ¶¶ 67-77); (b) the cost of complying with that procedure functions as a *de facto* financial barrier to participation in Indiana's elections (Comp. ¶¶ 78-80); (c) Indiana imposes unequal burdens on Independents and Minor Parties by requiring them to bear the cost of complying with the obsolete procedures they must follow, while

guaranteeing Major Party nominees automatic access to the general election ballot at taxpayer expense; and (d) Indiana can protect its legitimate interests by less burdensome, more narrowly tailored alternatives. (Comp. ¶¶ 89-92.) These allegations are supported by specific facts. (*E.g.*, Comp. ¶¶ 66, 79 (alleging that statewide Independents and Minor Parties have been unable to complete a successful nomination petition drive since 2000, and that none have done so since 1984 "except by spending substantial funds"); Comp. ¶ 67 (alleging that completing such an effort in 2022 will cost $465,000 - $565,000, which "functions as an absolute barrier to non-wealthy Minor Parties and Independents," including Plaintiffs.).)

Taken together, these and other allegations in the Complaint amply support Plaintiffs' claim that the Challenged Provisions, as applied in combination, violate their First and Fourteenth Amendment rights to cast their votes effectively, to speak and associate for political purposes, and to equal protection of law, by making it all but impossible for non-wealthy Independents and Minor Party candidates to qualify for the ballot. (Comp. ¶¶ 1, 81-88.) These allegations also support Plaintiffs' claims that Indiana's statutory scheme unconstitutionally imposes a financial burden on Independents and Minor Parties that is "patently exclusionary in character, and therefore discriminates on the basis of wealth." (Comp. ¶ 93 (citing *Bullock v. Carter*, 405 U.S. 134, 143 (1972).) Plaintiffs therefore state claims for relief that are plausible on their face, which is all they must do to survive dismissal under Rule 12(b)(6). *See Camasta*, 761 F.3d at 736 (quoting *Twombly*, 550 U.S. at 555, 570 (2007)); *see also Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

        **B.    The Secretary Fails to Challenge the Sufficiency of Plaintiffs' Allegations.**

The Secretary fails to address Plaintiffs' detailed allegations regarding the severe burdens that the Challenged Provisions, as applied in combination, impose upon Independents, Minor Parties and the voters who wish to associate with and support them. (Comp. ¶¶ 67-77.) The

4

Secretary also ignores Plaintiffs' allegations that Indiana may protect its legitimate interests through less burdensome, more narrowly tailored alternatives. (Comp. ¶¶ 89-92.) Rather than challenging the sufficiency of these allegations, as she must do to prevail under Rule 12(b)(6), the Secretary simply insists that two of the Challenged Provisions "are constitutional as a matter of law," and "undoubtedly constitutional." (Br. at 4, 8, 10.) Such conclusory assertions, proffered without any reference to the allegations in the Complaint, are insufficient to support dismissal under Rule 12(b)(6).

As the Supreme Court has repeatedly observed, constitutional challenges to state election laws "cannot be resolved by any 'litmus-paper test' that will separate valid from invalid restrictions." *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983) (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)). Instead, a reviewing court must:

> [F]irst consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Gill v. Scholz*, 962 F.3d 360, 364 (7th Cir. 2020) (citing *Anderson*, 460 U.S. 780; *Burdick v. Takushi*, 504 U.S. 428 (1992)). This "*Anderson-Burdick*" framework, the Seventh Circuit has explained, "requires careful analysis of the facts and [the result] should not be automatic." *Id.* at 364-65 (citation and quotation marks omitted). "These cases reject cursory or perfunctory analyses; precedent requires courts to conduct fact-intensive analyses when evaluating state electoral regulations." *Id.* at 365; *see also Stone v. Bd. of Election Com'rs*, 750 F.3d 678, 681 (7th Cir. 2014) ("a court must make a practical assessment of a challenged scheme's justifications and effects.") (citation omitted). Consequently, the Secretary's effort to dismiss Plaintiffs' claims

under Rule 12(b)(6), without even attempting to address the specific allegations on which they rely or the availability of less burdensome alternatives, is especially improper here.

Federal courts, including the Seventh Circuit, have repeatedly recognized that constitutional challenges to ballot access laws may be brought even where those laws have been upheld in prior cases. *See, e.g.*, *Gill*, 962 F.3d at 366 (reversing summary judgment for defendant where court failed "to perform the fact-intensive analysis required for the *Anderson-Burdick* balancing test"); *Cowen v. Georgia Sec. of State*, 960 F.3d 1339 (11th Cir. 2020) (same); *Bergland v. Harris*, 767 F.2d 1551 (11th Cir. 1985) (reversing 12(b)(6) dismissal on same grounds). The primary case on which the Secretary purports to rely also recognizes this fundamental principle. *See Hall v. Simcox*, 766 F.2d 1171, 1173 (7th Cir. 1985). Despite upholding Indiana's two percent signature requirement following the 1984 general election, when it first took effect, the Court observed:

> While [Indiana] certainly has an interest in limiting the length of the ballot in order to prevent confusion of voters, it has not shown that the protection of this interest required it to raise the petition requirement from .5 to 2 percent. If the 1984 election can be considered representative in this regard — and only time will tell — the new law will eliminate all minor parties from the presidential ballot.

*Id.* at 1173.

Here, Plaintiffs have alleged – and will present the evidence necessary to prove – exactly that: the Challenged Provisions, as applied in combination, are unconstitutional because they operate as a near-absolute bar to Minor Party and Independent candidates. (Compl. ¶¶ 1, 78-80.) Neither *Hall* nor any other case cited by the Secretary forecloses Plaintiffs from asserting that claim. On the contrary, *Hall* expressly recognizes that a subsequent challenge might succeed notwithstanding the plaintiffs' failure in that case, which was decided after the first election cycle in which the newly-increased two percent signature requirement took effect, and before the newly-increased two percent ballot retention requirement and June 30 filing deadline took effect. (Compl.

¶¶ 23-24.) Thus *Hall* did not and could not have addressed the decades-worth of evidence that Plaintiffs rely on here, which demonstrates the severity of the burden that the Challenged Provisions have imposed on Minor Parties and Independents since that case was decided in 1985.[2]

The Secretary's motion is also legally deficient for another reason. The Supreme Court has long recognized that "a number of facially valid provisions of election laws may operate in tandem to produce impermissible barriers to constitutional rights." *Storer*, 415 U.S. at 737. Consequently, when the constitutionality of such laws is challenged, lower courts must address the combined burden that they impose. *See Lee v. Keith*, 463 F.3d 763, 770 (7th Cir. 2006) ("[W]e are required to evaluate challenged ballot access restrictions together, not individually, and assess their combined effect on voters' and candidates' political association rights") (citing *Nader v. Keith*, 385 F.3d 729, 735 (7th Cir. 2004)). Notwithstanding this clear directive, the Secretary makes no attempt to address Plaintiffs' claim that the Challenged Provisions are severely burdensome as applied in combination. Indeed, the Secretary confines her discussion to just two of the provisions – the two percent signature requirement (IC 3-8-6-3) and the two percent ballot retention requirement (IC 3-8-4-1) – without even acknowledging that Plaintiffs challenge these provisions as applied in combination with the in-person, hand-signed paper nomination petition requirement (IC 3-8-6-6) and the requirement that nomination petitions be submitted to each county voter registration office by June 30. (IC 3-8-6-10(a),(b).) (*Compare* Br. at 4-10 *with* Compl. ¶ 95.) The Secretary likewise disregards Plaintiffs' challenge to Indiana's failure to

---

[2] Notably, *Hall* did not apply the *Anderson-Burdick* analysis (*Burdick* had not been decided yet), but the Seventh Circuit nevertheless observed that "to go from .5 percent all the way to 2 percent in one jump was abrupt, and seems to have brought the number of candidates well below the level that had seemed tolerable for at least 40 years," and that the "consequences" of the change might be "difficult to square with a test that requires that the state use the 'least drastic means' possible to regulate access to the ballot." *Hall*, 766 F.2d at 1173. The Court thus observed that "Indiana would be in trouble" if a heightened level of scrutiny were applicable. *Id.*

provide Independents with any procedure to retain ballot access. (*Compare* Br. at 4-10 *with* Compl. ¶ 95(d).)

A motion to dismiss cannot be granted with respect to claims it fails to address. Moreover, in this case, Plaintiffs' challenge to the in-person, hand-signed paper nomination petition requirement and the June 30 deadline for submitting nomination petitions to each county voter registration office is integral to their as applied in combination claims. (Compl. ¶¶ 67-82.) Because the Secretary fails to address those allegations, her motion cannot support dismissal of Plaintiffs' claims.

### 1. The Secretary Fails to Provide Grounds for Dismissal of Plaintiffs' First Amendment Claims.

The Secretary's misguided attempt to support dismissal of Plaintiffs' First Amendment claims is readily apparent from the first sentence of her discussion. "The Seventh Circuit has already spoken," the Secretary avers, and blithely concludes that Indiana's two-percent signature requirement "does not violate the First Amendment." (Br. at 4.) As explained above, however, the question presented by the Secretary's Rule 12(b)(6) motion is not whether the Challenged Provisions are unconstitutional, but only whether Plaintiffs' allegations are sufficient, if proven, to establish a constitutional violation – and on that question, the Seventh Circuit most certainly has not spoken. This case has never been before the Seventh Circuit. Consequently, that Court has had no occasion to rule on the sufficiency of Plaintiffs' allegations.

Moreover, no case that the Seventh Circuit has decided involved the particular allegations and claims that Plaintiffs assert here. The Secretary cites just two such cases – *Lee*, 463 F.3d 763 and *Hall*, 766 F.2d 1171 – and neither one addressed Plaintiffs' claim that the Challenged Provisions are unconstitutional because they operate as a *de facto* financial barrier to Minor Parties' and Independents' participation in Indiana's electoral process. (Comp. ¶¶ 78-80.) Nor

did those cases address Plaintiffs' claim that the Challenged Provisions impose unequal burdens on Plaintiffs by requiring them to pay the costs of complying with Indiana's antiquated 133-year-old petitioning procedure while guaranteeing Major Party nominees ballot access at taxpayer expense. (Compl. ¶¶ 1, 25, 67.) Likewise, neither *Lee* nor *Hall* addressed Plaintiffs' claim that the Challenged Provisions are unconstitutional because they operate to bar Minor Parties and Independents from Indiana's ballot, (Compl. ¶¶ 52-66) – on the contrary, *Hall* expressly recognized that Indiana's two-percent signature requirement might be struck down if subsequent evidence proved that to be true. *See Hall*, 766 F.2d at 1173. The Secretary's assertion that these cases bar Plaintiffs from asserting such claims here is therefore baseless.[3]

The Secretary also asserts that Indiana's two-percent signature requirement "is undoubtedly unconstitutional" because it is "less stringent" than those upheld in other cases arising from other states. (Br. at 7-8.) Setting aside the Secretary's improper focus on the merits rather than the sufficiency of Plaintiffs' allegations – which is itself grounds for denial of her motion – the Secretary's assertion is problematic for another reason. As the Seventh Circuit has explained, it is "difficult to rely heavily on precedent in evaluating [ballot] restrictions, because there is great variance among the states' schemes." *Nader*, 385 F.3d at 735. That is especially true where, as here, Plaintiffs challenge the two-percent signature requirement as applied in combination with other provisions of the Indiana Election Code. *See Storer*, 415 U.S. at 737; *Nader*, 385 F.3d at 735; *see also Hall*, 766 F.2d at 1174 (observing that "numbers aren't everything," lower signature requirements may be struck down "in conjunction with other restrictions," and "[t]he regulatory scheme must be considered in its entirety.") Simply put, none of the cases cited by the Secretary

---

[3] Indeed, the allegations cited herein support the conclusion that the Challenged Provisions are unconstitutional under long-standing Supreme Court precedent. *See Storer*, 415 U.S at 742 (ballot access restrictions are constitutionally suspect if "past experience" demonstrates that "reasonably diligent" candidates are unable to comply); *Jenness v. Fortson*, 403 U.S. 431, 438 (1971) (ballot access restrictions are unconstitutional if they "operate to freeze the political status quo.").

9

involved a challenge to *Indiana's* ballot access requirements, much less did they address Plaintiffs' specific claims against the Challenged Provisions as applied in combination or the particular facts on which they rely.

The Secretary's assertion that the Court need not "deviate from precedent here" is therefore nothing more than a *non-sequitor*. (Br. at 8.) None of the cases the Secretary cites involved Plaintiffs' specific claims, nor did any of them address the particular facts on which Plaintiffs' claims rely. Moreover, as the Secretary tacitly acknowledges, (Br. at 4, 8), these cases did not even address Indiana's two-percent requirement for retaining ballot access, much less Plaintiffs' claim that it is unconstitutional as applied in combination with the other Challenged Provisions. *See Storer*, 415 U.S. at 737; *Nader*, 385 F.3d at 735; *Hall*, 766 F.2d at 1174. Finally, even if these cases had upheld the Challenged Provisions as applied in combination – and they did not – it would not preclude Plaintiffs from bringing their claims based upon the new facts asserted here. *See, e.g.*, *Gill*, 962 F.3d at 366; *Hall*, 766 F.2d at 1173. Therefore, these cases cannot support dismissal here.

### 2. The Secretary Fails to Provide Grounds for Dismissal of Plaintiffs' Equal Protection Claims.

The Secretary's attempt to provide grounds for dismissal of Plaintiffs' Equal Protection claims fares no better. Once again, the Secretary begins with the unsupported assertion that Indiana's two-percent signature requirement and two-percent ballot retention requirement "do[] not violate the Equal Protection Clause of the U.S. Constitution as a matter of law." (Br. at 8.) And once again, that assertion is not only incorrect – the evidence will show that the Challenged Provisions, as applied in combination, impose severe and unequal burdens on Plaintiffs, which cannot be justified by any state interest – but also, it fails to identify any deficiency in Plaintiffs'

pleading, which is what the Secretary must do to prevail on her motion. *See Camasta*, 761 F.3d at 736 (quoting *Twombly*, 550 U.S. at 555, 570 (2007)); *see also Brooks*, 578 F.3d at 581.

Notably, the cases on which the Secretary's brief discussion relies were not decided at the pleading stage, but only following discovery and the development of a complete factual record. (Br. at 8 (citing *American Party of Texas v. White*, 415 U.S. 767 (1974); *Jenness*, 403 U.S. 431.) *American Party of Texas* was decided after a trial, *see American Party of Texas*, 415 U.S. at 771, and *Jenness* was decided on summary judgment. *See Jenness*, 403 U.S. at 432. The procedural posture of these cases thus refutes the Secretary's assertion that they resolved the asserted claims "as a matter of law." (Br. at 8.) Neither *American Party of Texas* nor *Jenness* were decided as a matter of law, but rather on the specific facts from which they arose, based upon the evidence produced at trial or in support of summary judgment. *See, e.g., American Party of Texas*, 415 U.S. at 794 ("We are unconvinced, at least upon the facts presently available…."); *Jenness*, 403 U.S. at 439 ("[T]he stipulation of facts in this record informs us that….").

Moreover, the fact that *American Party of Texas* upheld certain provisions of the Texas Election Code as applied 48 years ago, or that *Jenness* upheld certain provisions of Georgia law as applied 51 years ago, says precious little about whether the Challenged Provisions are constitutional as currently applied in Indiana. As the Seventh Circuit observed in *Hall*, focusing on the signature percentages alone – as the Secretary does here – "overlooks a number of things: it costs money to circulate petitions; the more signatures that are required, the higher the cost is; and minor parties usually are strapped for funds." *Hall*, 766 F.2d at 1174. Once again, these additional factors are critical to Plaintiffs' claims, (Compl. ¶¶ 67-82), and the Secretary simply disregards them.

The Secretary cites just one case in passing that was decided at the pleading stage, (Br. at 9 (citing *Stevo v. Keith*, 546 F.3d 405 (7th Cir. 2008)), and it is plainly distinguishable. *Stevo* was

11

expedited because of an impending election and no factual allegations in the Complaint were contested. In seeking preliminary relief, the plaintiff asserted that Illinois's five-percent signature requirement violated equal protection because it was "arbitrary" in that it was much more restrictive than the flat 5,000-signature requirement that Illinois imposed in years following a redistricting. *See Stevo*, 546 F.3d at 407. The District Court's resolution of that claim based on the pleadings was affirmed by the Seventh Circuit because it concluded that the proposed alternative "might well make [Illinois's] system more arbitrary than it already is." *Id.* at 409.

Here, by contrast, Plaintiffs' equal protection claim depends on evidence that Plaintiffs have yet to submit – in particular, evidence demonstrating that the cost of completing a statewide petition drive in Indiana is now $465,000 - $565,000, and that such cost has previously prevented certain Plaintiffs from completing petition drives and that it will prevent all Plaintiffs from doing so in future election cycles. (Compl. ¶¶ 78-81.) Even the Secretary does not contend that *Stevo* precludes Plaintiffs from asserting that claim. Instead, the Secretary asserts that the Equal Protection Clause does not require the state to "finance the efforts of every nascent political group seeking to organize itself and unsuccessfully attempting to win a place on the general election ballot." (Br. at 9 (quoting *American Party of Texas*, 415 U.S. at 793-94).) But Plaintiffs do not claim that Indiana is required to pay for their petition drives. Plaintiffs' claim is that Indiana imposes a severe and unequal burden on them by forcing them to bear that cost while guaranteeing the Major Party nominees ballot access by means of taxpayer-funded primary elections. (Compl. ¶¶ 1, 78-82.) *American Party of Texas* did not address that claim, and it does not preclude Plaintiffs from asserting it here.

Contrary to the Secretary's assertion, therefore, none of the cases on which she purports to rely provide grounds for dismissing Plaintiffs' claims. Whether the state interests the Secretary asserts – "avoid[ing] confusion, avoid[ing] frustration of the democratic process at the general

12

election, and deter[ring] party splintering and frivolous candidacies," (Br. at 9) – are sufficient to justify the severe and unequal burdens that the Challenged Provisions impose is a question that must be decided based on the specific facts and evidence in this case. *See Gill*, 962 F.3d at 365. Plaintiffs have adequately pled their claims and they are entitled to present the evidence necessary to support them. *See Triad Associates*, 892 F.2d at 586 (quoting *Scheuer*, 416 U.S. at 236). The Secretary's motion to dismiss therefore should be denied.

## CONCLUSION

For the foregoing reasons, the Secretary's motion to dismiss should be denied.

DATED:  June 7, 2022

Respectfully submitted,

/s/ Oliver B. Hall
Oliver Hall
(*Pro Hac Vice*)
CENTER FOR COMPETITIVE DEMOCRACY
P.O. Box 21090
Washington, DC 20009
202-248-9294
oliverhall@competitivedemocracy.org

Mark R. Brown
(*Pro Hac Vice*)
303 E. Broad Street
Columbus, Ohio 43215
614-236-6590
MBrown@law.capital.edu

William P. Tedards, Jr.
(*Pro Hac Vice*)
1101 30th Street NW, Suite 500
Washington, DC 20007
202-797-9135
BT@tedards.net

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

      I hereby certify that on June 7, 2022, the foregoing document was filed using the Court's CM/ECF system, which will effect service upon all counsel of record.

                                                    */s/Oliver B. Hall*
                                                    Oliver B. Hall