**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

|  |  |  |
|---|---|---|
| **INDIANA GREEN PARTY, et al.,** | ) | **Case No. 1:22-cv-00518-JRS-KMB** |
|  | ) |  |
| Plaintiffs, | ) | **Judge James R. Sweeney II** |
| v. | ) |  |
|  | ) | **Magistrate Judge Kellie M. Barr** |
| **DIEGO MORALES, in his official capacity as** | ) |  |
| **Secretary of State for the State of Indiana,** | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S CROSS-MOTION**
**FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR SUMMARY JUDGMENT**

Plaintiffs Indiana Green Party ("INGP"), Libertarian Party of Indiana ("LPIN"), John Shearer, George Wolfe, David Wetterer, A.B. Brand, Evan McMahon, Mark Rutherford, Andrew Horning, Ken Tucker and Adam Muehlhausen (collectively, "Plaintiffs") respectfully submit this Response in Opposition to the Cross-Motion for Summary Judgment filed by Defendant Diego Morales ("the Secretary") on June 19, 2023 (ECF Nos. 64, 65) ("Motion") and Reply in Support of the Motion for Summary Judgment that Plaintiffs filed on May 8, 2023 (ECF Nos. 60, 61).[1]

## INTRODUCTION

The Seventh Circuit has repeatedly observed that "summary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Industries, Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (citation and internal quotation marks omitted). Plaintiffs have complied with that

---

[1] The statutory provisions that Plaintiffs challenge are referenced hereinafter as follows: I.C. 3-8-6-3 (the "Signature Requirement"); I.C. 3-8-6-6, 3-8-6-10(a) (the "Petitioning Procedure"); I.C. 3-8-6-10(b) (the "Filing Deadline"); I.C. 3-8-4-1 (the "Vote Test"); and collectively, (the "Challenged Provisions").

directive by submitting 35 undisputed material facts and 17 declarations in support of their motion for summary judgment. (ECF No. 60 at 4-11; ECF No. 60-1 at 1-2.) This evidence establishes the Challenged Provisions' unconstitutionality by demonstrating the panoply of severe and unequal burdens they have imposed on Indiana's independent and minor party voters, candidates and political parties since they took effect four decades ago, which are wholly unjustified by any compelling or legitimate state interest. This robust evidentiary record amply supports Plaintiffs' request for judgment as a matter of law.

The Secretary, by contrast, fails to provide the Court with any factual or evidentiary basis to enter judgment in his favor. The Secretary expressly concedes the truth of all material facts asserted by Plaintiffs, (ECF No. 65 at 8), but conspicuously fails to address those facts or explain why they are insufficient to support Plaintiffs' claims. The Secretary completely disregards Plaintiffs' evidence with the exception of a single declaration that he mischaracterizes as "opinion" rather than the factual testimony of a competent first-hand witness. (ECF No. 65 at 16.) Further, the Secretary has not asserted a single material fact in support of his own Motion, (ECF No. 65 at 8), and he has submitted almost no admissible evidence. (ECF No. 64 at 3.)

In short, the Secretary asks the Court to deny Plaintiffs' Motion and grant his on the basis of a nearly fact-free, evidence-free submission. The Secretary thus relies almost exclusively on assertions made without citation to specific facts and without evidentiary support. But the Seventh Circuit has repeatedly emphasized that "conclusory statements, not grounded in specific facts, are not sufficient to avoid summary judgment." *Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 726 (7th Cir. 2004) (citation omitted). "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of truth of the matter asserted." *Id.* (citation and footnote omitted). Plaintiffs satisfy this demand; the Secretary does not.

By disregarding the factual and evidentiary record in this case, the Secretary necessarily takes the position that he should prevail no matter what the facts may show and the evidence may prove. But the Court has already rejected that argument. At the motion to dismiss stage, the Secretary relied on *Hall v. Simcox*, 766 F.2d 1171 (7th Cir. 1985), to argue that "controlling law so completely forestalls recovery that, even taking Plaintiffs' allegations as true, no relief can be granted." (ECF No. 35 at 2.) The Court rejected this "audacious" argument, explaining that *Hall* itself "left open the possibility that the two percent requirement, then new, would eventually prove unduly restrictive." (ECF No. 35 at 2, 3 (citation omitted).) Now at the summary judgment stage, Plaintiffs have presented the Court with proof that the Challenged Provisions are in fact unduly restrictive, whereas the Secretary has merely repackaged the same failed argument the Court rejected when it denied his motion to dismiss. (ECF No. 35 at 2-4.) The Court should reject that argument again. Plaintiffs' Motion should be granted and the Secretary's Motion should be denied.

## ARGUMENT

**I.  Plaintiffs' Motion for Summary Judgment Should Be Granted Because the Uncontested Facts and Evidence Demonstrate That the Challenged Provisions Impose Severe Burdens That Are Not Justified By Any Compelling or Legitimate State Interest.**

The uncontroverted evidentiary record in this case conclusively establishes that the Challenged Provisions cannot withstand scrutiny under the *Anderson-Burdick* analytic framework. *See Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). The Challenged Provisions impose severe burdens on Plaintiffs' rights as voters, candidates and political parties, and they are not narrowly tailored to further any compelling or legitimate state interest. The Challenged Provisions are therefore unconstitutional as applied.

**A.  The Uncontested Facts and Evidence Establish That the Challenged Provisions Are Severely Burdensome Under Every Standard the Supreme Court Has Recognized.**

"[T]here is no litmus test for measuring the severity of a burden that a state law imposes," *Stone v. Board of Election Com'rs for City of Chicago*, 750 F.3d 678, 681 (7th Cir. 2014) (citation omitted), but the Supreme Court has nonetheless recognized that certain factors are sufficient. Ballot access requirements may be severe, for example, if they "limit[] political participation by an identifiable political group whose members share a particular viewpoint, associational preference, or economic status." *Anderson*, 460 U.S. at 793 (footnote omitted). They also may be severe if "past experience" demonstrates that "reasonably diligent" candidates have not "qualified with some regularity…." *Storer v. Brown*, 415 U.S. 724, 742 (1974). And ballot access requirements are severe if they "operate to freeze the political status quo." *Jenness v. Fortson*, 403 US 431, 438 (1971). The uncontested facts and evidence here demonstrate that the Challenged Provisions are severely burdensome under each of these standards.

   1.  **The Challenged Provisions Limit Participation Based on Associational Preferences and Economic Status.**

Under Indiana law, Major Parties – the parties whose candidates received the highest and second-highest number of votes for Secretary of State, *see* I.C. 3-5-2-30(1) – select and place their nominees on the general election automatically, by means of taxpayer-funded primary elections. *See* I.C. 3-10-1-2; IC 3-11-6-1; IC 3-11-6-9; IC 3-11-6.5-2. The Challenged Provisions, as applied in combination, therefore apply only to independent candidates and candidates who seek the nomination of a non-Major Party. They limit the participation of all candidates whose "associational preference" is to run for office outside the Democratic or Republican parties. *Anderson*, 460 U.S. at 793.

The evidence in the record establishes that volunteer petition drives have rarely, if ever, succeeded in qualifying a statewide candidate for Indiana's general election ballot in the four decades since the Challenged Provisions took effect. (Statement of Material Facts Not in Dispute,

ECF No. 61 ("SMF") #1, 3, 14.) The procedures for complying with the Challenged Provisions are too burdensome and the resources required are too great. (Brand Decl. ¶ 8; Buchanan Decl. ¶¶ 5-8, 10, 12-13; Hawkins Decl. ¶¶ 5-11; Kafoury Decl. ¶¶ 7-11, 14; McMahon Decl. ¶¶ 32-34; Muehlhausen Decl. ¶¶ 7-15; Redpath Decl. ¶¶ 8-13; Stein Decl. ¶¶ 5-9; Tucker Decl. ¶ 12; Verney Decl. ¶¶ 8-18; Wetterer Decl. ¶ 8.) As a result, the few statewide petition drives that have succeeded since the Challenged Provisions took effect – and none have succeeded since 2000, (SMF #1) – did so only due to the expenditure of substantial funds to hire paid petition circulators. (SMF #6-7; Verney Decl. ¶¶ 15, 18; McMahon Decl. ¶ 32.)  In 2022, the cost of a statewide petition drive ranged from $465,000 to $565,000. (Wetterer Decl. ¶¶ 5-6.) Because Plaintiffs lack the funds to pay such exorbitant sums, the Challenged Provisions impose an insurmountable financial barrier to their participation in Indiana's electoral process. (Brand Decl. ¶¶ 6, 8-9; McMahon Decl. ¶¶ 32-34; Muehlhausen Decl. ¶ 19; Wetterer Decl. ¶¶ 9-12.)

The foregoing evidence establishes that the Challenged Provisions are severely burdensome under *Anderson* because they impose a financial barrier to entry on all candidates who seek to run for office outside the Democratic and Republican parties, and because that financial barrier is insurmountable for non-wealthy candidates, including Plaintiffs. The Challenged Provisions thus limit participation based on associational preference and economic status. *See Anderson*, 460 U.S. at 793.

### 2. Past Experience Demonstrates That Reasonably Diligent Candidates Cannot Comply With the Challenged Provisions.

In *Storer*, the Supreme Court concluded that if "past experience" shows that candidates have not complied with a state's ballot access requirements "with some regularity," that fact may establish a severe burden. *See Storer*, 415 U.S. at 742. The Seventh Circuit has applied the *Storer* past experience test to conclude that Illinois' ballot access requirements were severely burdensome

based on the "complete exclusion" of independent candidates for the preceding 25 years. *See Lee v. Keith*, 463 F.3d 763, 770 (7th Cir. 2006). Here, too, no candidate for statewide office has complied with the Challenged Provisions for 23 years and counting, (SMF #1) – a period of complete exclusion commensurate with that in *Lee*.

Further, the last statewide candidate to comply with the Challenged Provisions, independent Patrick Buchanan in 2000, was able to do so only because he had millions of dollars in matching funds to support his petition drive. (SMF #6-7.) Similarly, the last such candidate prior to Buchanan, independent Ross Perot in 1996, was a billionaire who spent millions to self-finance his ballot access efforts in Indiana and nationwide. (Verney Decl. ¶¶ 15, 18.) This evidence supports the conclusion that the Challenged Provisions are severely burdensome under the *Storer* past experience test. The Challenged Provisions have completely excluded independent and minor party candidates for decades, and the most recent candidates to comply with them did so only by spending large sums of money. To comply with the Challenged Provisions as presently applied, "diligence" alone is not enough; money – and lots of it – is the critical factor.

### 3. The Challenged Provisions Operate to Freeze the Political Status Quo.

The above-cited evidence also supports the conclusion that the Challenged Provisions are severely burdensome because they "operate to freeze the political status quo." *Jenness*, 403 U.S. at 438. When the Supreme Court found that Georgia's ballot access requirements did not do so in *Jenness*, it relied primarily on evidence demonstrating that candidates had successfully complied with them in each of the two preceding elections. *See id.*, at 439-440. This case thus stands in sharp contrast with *Jenness*, because the uncontested evidence demonstrates that no candidate for statewide office has complied with the Challenged Provisions in the 11 election cycles since 2000. (SMF #6.) That is "powerful evidence" that the Challenged Provisions are severely burdensome. *See Stone*, 750 F.3d at 684 (contrasting cases where candidates had regularly complied with ballot

access requirements against those in which they had not). It establishes the "stifling effect" that the Challenged Provisions have had on Indiana's electoral process. *See Lee*, 463 F.3d at 768-769 (concluding that ballot access requirements imposed severe burdens where candidates had failed to comply with them for 12 election cycles).

The evidence demonstrating that the Challenged Provisions have frozen Indiana's political status quo is even stronger than the evidence in *Lee*, because the record here, unlike *Lee*, establishes that that no candidate will qualify for Indiana's statewide general election ballot in future election cycles unless the candidate has approximately $500,000 or more to finance a petition drive. (Brand Decl. ¶ 8; Buchanan Decl. ¶ 13; Kafoury Decl. ¶ 11; McMahon Decl. ¶ 32; Redpath Decl. ¶ 9; Wetterer Decl. ¶¶ 5-6.) Plaintiff LPIN is the Indiana state affiliate of the third largest political party in the United States, and that cost is well beyond its financial means. (McMahon Decl. ¶¶ 32-34.) The same is true of Plaintiff INGP and every other Plaintiff. (Brand Decl. ¶ 8.) The evidence therefore establishes that Indiana's political status quo has not only been frozen for two decades and counting, but also, in future elections Indiana's electoral process will remain closed to all but the wealthiest of candidates who can afford the price of admission.

**B. The Uncontested Facts and Evidence Establish That the Challenged Provisions Impose Unequal Burdens.**

The burdens imposed by the Challenged Provisions fall on independents and new or minor parties alone. Major Parties are not impacted at all. The uncontested facts and evidence therefore establish that the Challenged Provisions unequally burden independents and new or minor parties.

**1. Indiana Guarantees Major Party Candidates Automatic Ballot Access at Taxpayer Expense But Requires Independents and Minor Parties to Bear the Exorbitant Cost of Complying With the Challenged Provisions.**

Under Indiana law, Major Parties select and place their nominees on the general election ballot by means of primary elections. I.C. 3-10-1-2. Taxpayer funds are used to pay the entire cost

of the primary elections, including all necessary labor, equipment and supplies, down to the last paper clip. (SMF #15); IC 3-11-6-1; IC 3-11-6-9; IC 3-11-6.5-2. Once the Major Parties select their nominees by means of the primary election, the nominees are placed on the general election ballot automatically. (SMF #17.) Neither the party nor the nominee incurs any expense in connection with that process. (SMF #17.)

In each election cycle, Indiana spends millions of dollars in taxpayer funds on the Major Parties' primary elections. (King Dep. Tr. (January 11, 2023) 24:6-14.) In 2020 alone, Indiana spent $14,676,849.66 on their primary elections. (SMF #16.)

Independents and unqualified minor party candidates, by contrast, must bear all costs associated with their efforts to comply with the Challenged Provisions. (SMF #18.) Indiana does not even provide independent and unqualified minor party candidates with the petition sheets they must submit. (King Dep. Tr. (ECF No. 51-5) 23:18-21.) As a result, independents and unqualified minor party candidates must pay the cost of printing and photocopying the thousands of petition sheets needed to conduct a statewide petition drive. (*Id.*)

In 2022, the cost for a candidate for statewide office to comply with the Challenged Provisions ranged from $465,000 to $565,000. (SMF #11.) The exorbitant cost is due to the large number of signatures needed to comply with the Signature Requirement, the time crunch imposed by the early Filing Deadline, which necessitates a massive dedication of petition circulators and other laborers, and the inherently laborious and inefficient Petitioning Procedure, which is ill-suited as a means of demonstrating the requisite voter support. (Brand Decl. ¶ 8; Buchanan Decl. ¶¶ 5-8, 10, 12-13; Hawkins Decl. ¶¶ 5-11; Kafoury Decl. ¶¶ 7-11, 14; McMahon Decl. ¶¶ 32-34; Muehlhausen Decl. ¶¶ 7-15; Redpath Decl. ¶¶ 8-13; Stein Decl. ¶¶ 5-9; Tucker Decl. ¶ 12; Verney Decl. ¶¶ 8-18; Wetterer Decl. ¶ 8.)

Collecting signatures by hand on paper petitions is difficult work that is both physically and mentally taxing. (Buchanan Decl. ¶¶ 6-7; Kafoury Decl. ¶¶ 9-10; Muehlhausen Decl. ¶¶ 14-16; Redpath Decl. ¶¶ 11-12; Wetterer Decl. ¶ 8.) It is also inefficient due to the large number of signatures that cannot be validated because a voter's handwriting is illegible, or because the required information is omitted, improperly entered or does not match the voter's registered information. (Buchanan Decl. ¶ 4; Hawkins Decl. ¶ 9; Kafoury Decl. ¶ 8; Muehlhausen Decl. ¶¶ 14-17; Redpath Decl. ¶ 8; Stein Decl. ¶ 5; Tucker Decl. ¶ 8; Verney Decl. ¶ 7.) As a result, it is necessary to exceed the Signature Requirement by approximately 50 percent to ensure compliance with that requirement. (*Id.*)

Indiana provides independent and minor party candidates with only one method by which they may qualify for the ballot: they must comply with the Challenged Provisions. Thus, while Indiana guarantees that Major Party nominees appear on the general election ballot automatically, at taxpayer expense, it compels independents and minor parties to bear the heavy burden and exorbitant expense of complying with the Challenged Provisions.

### 2. The Challenged Provisions Prohibit Minor Parties From Forming and Retaining Ballot Access in Presidential Election Years.

To become ballot-qualified in Indiana, a minor party must place its candidate for Secretary of State on the ballot, and the candidate must comply with the Vote Test. I.C. 3-8-6-3; I.C. 3-8-4-1. There is no other method. The election for Secretary of State is held every four years, in non-presidential election cycles. (SMF #4.) As a result, it is impossible, under Indiana law, to form a new political party that becomes ballot-qualified in a presidential election year. (*Id.*)

The election for President generates more interest and support among minor party voters, including Plaintiffs' supports, than any other election. (McMahon Decl. ¶ 15; Rutherford Decl. ¶ 8; Wolfe Decl. ¶¶ 4-5, 11-13.) A presidential campaign is therefore the most effective vehicle by

which a minor party could become ballot-qualified. (*Id.*) By prohibiting minor parties from using this vehicle, the Challenged Provisions unequally burden minor parties. They prohibit minor parties from seeking ballot-qualification by leveraging the support of their highest-profile candidate during election cycles when their supporters are most engaged. (*Id.*)

> ### 3. The Challenged Provisions Compel Minor Parties to Distort Their Political and Strategic Priorities and Divert Their Resources to Focus Exclusively on the Race For Secretary of State.

The office of Secretary of State is a ministerial position that generates little interest among voters, including Plaintiffs' supporters. (McMahon Decl. ¶ 16; Rutherford Decl. ¶¶ 7-9; Wolfe Decl. ¶ 13.) Voters are much more interested and engaged in elections for higher-profile offices like President, United States Senator, Governor and Attorney General. (*Id.*) Because the Signature Requirement and Vote Test are tied exclusively to the office of Secretary of State, however, minor parties must prioritize the election for that office over all others, contrary to their political and strategic goals and to the detriment of their ability to grow and build support among the electorate. (McMahon Decl. ¶¶ 15-29; Rutherford Decl. ¶¶ 7-9; Wolfe Decl. ¶¶ 8, 11-13.)

Minor parties that are not ballot-qualified, like Plaintiff INGP, have no choice but to organize their ballot access efforts around a candidate for Secretary of State. But the office of Secretary of State is ill-suited to that purpose. The Secretary of State is not involved in and has no impact on the issues that motivate voters to turn out in support of a candidate and the party the candidate represents. (*Id.*) As a result, it is practically impossible for a minor party to galvanize voter support for its platform on the basis of a campaign for Secretary of State. (*Id.*) Unqualified parties like INGP must nevertheless dedicate their limited resources to their candidate for that office, because it is the only means by which they can become ballot-qualified under the Signature Requirement. (Brand Decl. ¶ 6; Wolfe Decl. ¶¶ 8, 11-13.)

Minor parties that are ballot-qualified, like Plaintiff LPIN, are similarly burdened. In each election cycle when the Secretary of State is up for election, LPIN must divert all of its efforts and resources away from the high-profile races that motivate and engage its supporters, and dedicate them instead to its candidate for Secretary of State, because that is the only means by which LPIN can retain ballot-qualification under the Vote Test. (SMF #12; McMahon Decl. ¶¶ 15-29; Rutherford Decl. ¶¶ 7-9.) This harms LPIN's ability to grow and develop support among the electorate. (*Id.*) It compels LPIN to prioritize the race for Secretary of State over all others, even though that office is ill-suited as a means for the party to disseminate its ideas and build support for its platform. (*Id.*)

Major parties are not impacted by the Signature Requirement and Vote Test. As a practical matter, they are virtually guaranteed to comply with the Vote Test and retain ballot-qualification just by running a candidate for Secretary of State. Thus, unlike minor parties, they remain free to focus their resources and efforts on any election they choose, consistent with their political and strategic goals.

### 4.  The Challenged Provisions Prohibit Independents From Retaining Ballot Access No Matter How Much Voter Support They Demonstrate.

The Vote Test does not apply to independent candidates and there is no other method by which such candidates can retain ballot-qualification under Indiana law. (SMF #5.) The Challenged Provisions thus prohibit independent candidates from retaining ballot access no matter how much voter support they demonstrate. (*Id.*) This unequally burdens independent candidates in two ways. First, unlike partisan candidates, they must bear the burden and expense of complying with the Challenged Provisions in each election cycle, even if they receive enough votes to retain ballot-qualification under the Vote Test. Second, it chills independents from running for office because they have no way under Indiana law to retain their status as ballot-qualified candidates.

### C. The Severe and Unequal Burdens Imposed by the Challenged Provisions Injure Plaintiffs' Fundamental Rights as Voters, Candidates and Political Parties.

The Supreme Court has recognized that ballot access requirements burden "the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Williams v. Rhodes*, 393 U.S. 23, 30 (1968). Further:

> The right to form a party for the advancement of political goals means little if a party can be kept off the election ballot and thus denied an equal opportunity to win votes. So also, the right to vote is heavily burdened if that vote may be cast only for one of two parties at a time when other parties are clamoring for a place on the ballot.

*Id.*, at 31. The Court has also recognized that "the exclusion of candidates … burdens voters' freedom of association, because … a candidate serves as a rallying point for like-minded citizens." Anderson, 460 U.S. at 787-788. And the Court has recognized that ballot access laws burden political parties when they interfere with their "basic function … to select the candidates for public office to be offered to the voters at general elections." *Kusper v. Pontikes*, 414 U.S. 51, 58 (1973).

The uncontested facts and evidence establish that the Challenged Provisions gravely impair Plaintiffs' exercise of each of these rights. The Challenged Provisions harm Plaintiffs as voters. (Brand Decl. ¶¶ 12-13; Muehlhausen Decl. ¶¶ 3-4, 21; Rutherford Decl. ¶¶ 10-11; Tucker Decl. ¶ 4; Wetterer Decl. ¶ 14; Wolfe Decl. ¶ 3.) They harm Plaintiffs as candidates. (McMahon Decl. ¶¶ 20, 28-29; Muehlhausen Decl. ¶ 4, 19; Rutherford Decl. ¶ 8; Tucker Decl. ¶ 5; Wetterer Decl. ¶ 13; Wolfe Decl. ¶ 4.) And the Challenged Provisions harm Plaintiffs as political parties. (Brand Decl. ¶¶ 6, 8-11; McMahon Decl. ¶¶ 12-29; Muehlhausen Decl. ¶ 4; Rutherford Decl. ¶¶ 8-11; Tucker Decl. ¶ 3; Wetterer Decl. ¶¶ 11-12; Wolfe Decl. ¶¶ 11-13.)

The Secretary does not address or dispute the foregoing evidence in any way. The record therefore conclusively establishes that the severe and unequal burdens imposed by the Challenged

Provisions injure Plaintiffs' fundamental rights as voters, candidates and political parties. *See Lucas*, 367 F.3d at 726.

### D. The Uncontested Facts and Evidence Establish That the Challenged Provisions Are Not Sufficiently Tailored to Further Any Compelling or Legitimate State Interest.

The uncontested facts and evidence also establish that the Challenged Provisions are not narrowly tailored to further any compelling or legitimate state interest. (ECF No. 61 at 27-29.) The Signature Requirement and Vote Test were sufficient to protect Indiana's legitimate regulatory interests before they were quadrupled in 1980. (SMF #24-28.) The Signature Requirement is now greater, by many orders of magnitude, than necessary to protect those interests. (*Id.*) The June 30 Filing Deadline – more than four months before the general election – is also earlier than necessary to protect any legitimate interest. (SMF #31-33.)  Indeed, the Filing Deadline, which was as late as August 1 in 1987, is now earlier than it has ever been, (SMF #31), and no candidate for statewide office has complied with the Challenged Provisions since it was enacted in 2001. (SMF #1.)

Finally, the Petitioning Procedure is inherently laborious, inefficient and expensive. (Brand Decl. ¶ 8; Buchanan Decl. ¶¶ 5-8, 10, 12-13; Hawkins Decl. ¶¶ 5-11; Kafoury Decl. ¶¶ 7-11, 14; McMahon Decl. ¶¶ 32-34; Muehlhausen Decl. ¶¶ 7-15; Redpath Decl. ¶¶ 8-13; Stein Decl. ¶¶ 5-9; Tucker Decl. ¶ 12; Verney Decl. ¶¶ 8-18; Wetterer Decl. ¶ 8.) It is ill-suited as a means of demonstrating the requisite voter support because it compels candidates to exceed the Signature Requirement by approximately 50 percent to ensure they comply with it. (Buchanan Decl. ¶ 4; Hawkins Decl. ¶ 9; Kafoury Decl. ¶ 8; Muehlhausen Decl. ¶¶ 14-17; Redpath Decl. ¶ 8; Stein Decl. ¶ 5; Tucker Decl. ¶ 8; Verney Decl. ¶ 7.) And although Indiana currently spends approximately $14 million in each election cycle on the Major Party primary elections, (SMF #16), Indiana has not updated or improved the Petitioning Procedure in the 134 years since it was adopted in 1889. Less burdensome procedures, such as electronic petitioning platforms, are available but the

Secretary has never considered them. (McReynolds Decl. ¶¶ 15-27; King Dep. Tr. 70:2-7.) Such modern procedures reduce the burden and expense imposed on both candidates and states because they automatically validate signatures. (McReynolds Decl. ¶¶ 17-21, 23.)

## II. The Secretary Fails to Provide the Court With Any Factual or Legal Basis to Deny Plaintiffs' Motion.

When the Court denied the Secretary's motion to dismiss, it observed that Plaintiffs could carry their burden in this case by presenting facts and evidence demonstrating that the Challenged Provisions are "unduly restrictive" as currently applied. (ECF No. 35 at 3-4.) Plaintiffs have presented the Court with such facts. (ECF No. 61 at 4-11.) Plaintiffs have also submitted a robust evidentiary record, consisting of 17 declarations, which amply supports their claims. (ECF No. 60-1 at 1-2.) Plaintiffs have carried their burden.

The Secretary expressly concedes the truth of Plaintiffs' material facts but disregards almost all of them. (ECF No. 65 at 8.) The Secretary also disregards almost all of Plaintiffs' evidence. With the exception of a single declaration, (ECF No. 65 at 15-16,) the Secretary does not acknowledge Plaintiffs' evidence at all. Additionally, the Secretary submits almost no admissible evidence. For the reasons set forth below, the Secretary's fact and evidence-free assertions are insufficient to defeat Plaintiffs' Motion.

### A. The Secretary's Unsupported Assertion That Rational Basis Scrutiny Applies Violates Seventh Circuit and Supreme Court Precedent and Contradicts the Undisputed Facts.

The Secretary begins by proffering a litany of unsupported assertions – without citation to a single fact in the record – in an attempt to establish that the burdens imposed by the Challenged Provisions are "not severe" and the Court should apply "rational basis" review. (ECF No. 65 at 12-14.) This approach directly violates Seventh Circuit and Supreme Court precedent. As this Court has observed, "constitutional claims against ballot access schemes require a 'fact-intensive

analysis'" under the *Anderson-Burdick* framework. (ECF No. 35 at 2 (quoting *Gill v. Scholz*, 962 F.3d 360, 365 (7th Cir. 2020).) That is especially true with respect to the severity of the burden imposed, because that is the central issue in this case. *See Stone*, 750 F.3d at 681 (citation omitted). The Secretary therefore cannot establish that the Challenged Provisions are not severely burdensome without addressing the uncontested facts and evidence demonstrating that they are.

Furthermore, the uncontested facts and evidence directly contradict the Secretary's unsupported assertions. The Secretary asserts, for example, that the Challenged Provisions "do not prevent a voter from voting for their chosen candidate, a candidate from running for their chosen office, or voters from associating with their party of choice," (ECF No. 65 at 13), but the uncontested facts and evidence establish that they seriously impair each of these protected activities. (*See supra* at p.12.) It is undisputed that no candidate for statewide office has complied with the Challenged Provisions for 23 years and counting. (SMF #1.) In all that time, the independent Plaintiffs and Plaintiff INGP's supporters have been denied the opportunity to vote for their preferred candidates for statewide office and almost every other office. (Brand Decl. ¶¶ 6, 12-13; Muehlhausen Decl. ¶ 21; Tucker Decl. ¶ 4; Wetterer Decl. ¶ 14; Wolfe Decl. ¶ 3.) Plaintiff LPIN and its supporters, meanwhile, must forego their support for any other candidate when the Secretary of State is up for election, due to the imperative to ensure that the candidate for Secretary of State complies with the Vote Test. (McMahon Decl. ¶¶ 14-29; Rutherford Decl. ¶¶ 8-11.)

The Secretary next asserts that the Challenged Provisions do not "mandate how political parties make strategy decisions," (ECF No. 65 at 13), but the above-cited establish that they drastically distort LPIN's and GPIN's political and strategic priorities. Both parties must prioritize the race for Secretary of State over all others, which harms their ability to grow and build support among the electorate by focusing their limited resources on the high-profile races that most interest

voters. That the Challenged Provisions do not statutorily "mandate" this result is immaterial, because that is their actual impact.

The Secretary asserts that the Challenged Provisions "place no limitation" on voters' right to cast their votes, (ECF No. 65 at 13), but the uncontested facts and evidence establish that they systematically deny voters' right to cast their votes for candidates who represent their views. (Brand Decl. ¶¶ 6, 12-13; Muehlhausen Decl. ¶ 21; Tucker Decl. ¶ 4; Wetterer Decl. ¶ 14; Wolfe Decl. ¶ 3.) Finally, the Secretary asserts that Challenged Provisions do not "prevent individuals from … forming political parties," (ECF No. 65 at 13), but the uncontested facts and evidence establish that they infringe this protected right, too. No unqualified party has complied with the Challenged Provisions since LPIN in 1994 – a period of nearly 30 years. (SMF #1, 3; McMahon Decl. ¶ 11.) Further, the cost for a party to comply with the Challenged Provisions now approaches $500,000 or more, which is more than sufficient to exclude any non-wealthy party, including INGP and LPIN. (SMF #11, 14.)

Without addressing any of the foregoing evidence – or any evidence at all – the Secretary blithely dismisses Plaintiffs' claims as grounded in nothing more than "disappointment" that the Challenged Provisions do not satisfy their "preferences" with respect to their efforts to participate in Indiana's electoral process. (ECF No. 65 at 14.) In essence, the Secretary contends that because the Challenged Provisions do not statutorily prohibit voters from voting, candidates from running or parties from forming, they cannot be severely burdensome. But here too the Secretary runs afoul of Supreme Court precedent. Plaintiffs have cited this precedent, (ECF No. 61 at 17-18 (citing *Williams*, 393 U.S. at 30; *Bullock v. Carter*, 405 U.S. 134, 143 (1972); *Kusper*, 414 U.S. at 57; *Anderson*, 460 U.S. at 787-788), and it demonstrates that the Challenged Provisions severely burden Plaintiffs' rights as voters, candidates and political parties. The Secretary makes no attempt to address this precedent or explain why it does not apply here.

The Secretary's assertion that the Court should apply rational basis review is wrong for another reason: the Secretary cites an improper legal standard. (ECF No. 65 at 14 (citing *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976)).) *City of New Orleans* involved an Equal Protection challenge to an economic regulation, and the Court's deferential review was guided by the fact that "[s]tates are accorded wide latitude in the regulation of their local economies under their police powers…." *City of New Orleans*, 427 U.S. at 303. That case has no application to this election law case. As the Seventh Circuit has recognized, the *Anderson-Burdick* framework applies both to Plaintiffs' First Amendment and Plaintiffs' Equal Protection claims. *See Libertarian Party of Illinois v. Rednour*, 108 F.3d 768, 773 n.9 (7th Cir. 1997). Other circuits are in accord. *See Rogers v. Corbett*, 468 F.3d 188, 193-194 (3rd Cir. 2006) (collecting cases).

Under the *Anderson-Burdick* framework, the laundry list of state interests the Secretary asserts as purported justification for the burdens imposed by the Challenged Provisions is plainly insufficient. (ECF No. 65 at 14-15.) The Secretary has simply asserted every conceivable state interest, collectively, as justification for every burden imposed by the Challenged Provisions. (ECF No. 64-2 at 2-10.) But the Secretary makes no attempt to demonstrate, by citation to facts or evidence in the record, how any of those asserted interests (assuming they are legitimate) justifies any particular burden on Plaintiffs' rights. (ECF No. 65 at 14-16); *see Gill*, 962 F.3d at 364 (7th Cir. 2020) (citation omitted) (the State must identify the "precise interests" that justify the burdens imposed by its requirements); *see also Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 191 (2008) ("However slight [the] burden may appear ... it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation.") (citation and quotation marks omitted)). As the Seventh Circuit has repeatedly emphasized, district courts "are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them." *Johnson*, 325 F.3d at 901 (citations omitted).

Here, the Secretary relies on a single piece of evidence: the affidavit of Jerrold A. Bonnet. (ECF No. 65 at 15-16.) The Secretary did not disclose Mr. Bonnet as a witness, however, and his affidavit should be excluded.[2] But even if Mr. Bonnet's affidavit were admissible, it does nothing to support the Secretary's position. The paragraph that the Secretary cites as "evidence" simply identifies the same laundry list of state interests the Secretary asserts now, and avers that the Secretary "provided" them to Plaintiffs. (ECF No. 64-1 at 3-4, ¶ 17.) Mr. Bonnet's affidavit provides no facts suggesting that the asserted interests are even implicated, much less that any Challenged Provision is sufficiently tailored to further them.

Mr. Bonnet does attest to one alleged fact – that when Indiana quadrupled its signature requirement in 1980, the "change was implemented, in part, to reduce the confusion caused by the 1980 election with eight presidential candidates on the ballot," (ECF No. 64-1 at 3, ¶ 14) – but even if it were admissible that statement should not be credited for several reasons. First, Mr. Bonnet avers that he has served as the Secretary's General Counsel "since 2005." (ECF No. 64-1 at 1, ¶ 2.) Therefore, nothing in his affidavit supports the conclusion that he has "personal knowledge" of the reasons Indiana quadrupled the Signature Requirement in 1980. (ECF No. 64-1 at 1, ¶ 1.) Second, the legislation quadrupling the Signature Requirement was enacted on March 3, 1980 – eight full months before the 1980 presidential election, *see Hall*, 766 F.2d at 1172 – making it impossible that the legislation was adopted in response to any "confusion" in that election (not to mention the complete lack of evidence of any such confusion). Finally, during the discovery process, the Secretary repeatedly disavowed any knowledge of the reasons Indiana quadrupled its signature requirement. (*E.g.*, ECF No. 64-2 at 2 ("Defendant is the Secretary of

---

[2] The Secretary did not disclose Mr. Bonnet by name as required by Fed. R. Civ. P. 26(a), thus depriving Plaintiffs of their right to depose him pursuant to Fed. R. Civ. P. 30. The only disclosure the Secretary made pursuant to Rule 26(a) is that "Representatives from the Secretary of State's office would have discoverable information…." Mr. Bonnet's affidavit is therefore inadmissible under Fed. R. Civ. P. 37(c).

State, not the Indiana General Assembly, had no role in the passage of any statute, and *has no direct knowledge of the intention behind their passage*.") (emphasis added); Dep. Tr. of Johnathan Bradley King (February 13, 2023) at 59-6 – 59-7 ("I cannot provide specific information in this regard, but I can provide speculation."). The Secretary is bound by this testimony propounded during the discovery process. He may not disavow any knowledge of the reasons Indiana quadrupled its signature requirement, both in response to an interrogatory and in a Rule 30(b)(6) deposition, then submit evidence from an undisclosed witness that purports to establish the very facts of which he previously claimed ignorance. *See generally*, S. Gensler, FEDERAL RULES OF CIVIL PROCEDURE: RULES AND COMMENTARY 689 (2014) ("many courts have held that an organizational party will not be able to add to or alter its position on matters covered in a Rule 30(b)(6) deposition unless the party can show that the 'new' information was not known or reasonably available at the time of the deposition.") (footnote omitted).

In sum, the Secretary's assertion that rational basis review applies here violates binding precedent and contradicts the uncontested facts and evidence. It should be rejected. Plaintiffs have presented specific facts, amply supported by competent evidence, which demonstrate that the Challenged Provisions severely burden their rights as voters, candidates and political parties. The Challenged Provisions cannot withstand scrutiny under the *Anderson-Burdick* analysis, therefore, unless the Secretary demonstrates that they are "narrowly drawn to advance a state interest of compelling importance." *Burdick*, 504 U.S. at 434 (citation and quotation marks omitted).

## B. The Secretary's Attempt to Defend the Challenged Provisions Without Addressing the Uncontested Facts and Evidence Fails.

The Secretary's attempt to defend the Challenged Provisions on the merits suffers from the same defects as his prior discussion. It concedes but fails to address the material facts asserted by Plaintiffs, (ECF No. 65 at 8, 17-33), it disregards Plaintiffs' evidence, and it is wholly unsupported

by any admissible affirmative evidence. It consists almost entirely of conclusory, fact-free assertions that the Seventh Circuit has rejected time and again as insufficient to support summary judgment. *See Lucas*, 367 F.3d at 726 (citation omitted). The Court should reject them here too.

Additionally, despite paying lip service to Plaintiffs' claims that the Challenged Provisions are unconstitutional as applied in combination, (ECF No. 1 at 25-26, ¶¶ 97, 99), the Secretary does not genuinely attempt to defend those claims. The Secretary never even acknowledges, for example, the uncontested facts that no statewide candidate has complied with the Challenged Provisions for 23 years and counting, or that the cost of doing so at present market rates approaches $500,000 or more. Instead, contrary to this Court's guidance that it "must consider how [the Challenged Provisions] act together to burden Plaintiffs' rights," (ECF. No. 35 at 4 (citing *Lee v. Keith*, 463 F.3d 763, 770 (7th Cir. 2006)), the Secretary attempts to defend the Challenge Provisions by asserting that each one, as applied separately, is not severely burdensome. (ECF No. 65 at 19-29.) Such assertions cannot defeat Plaintiffs' as applied in combination claims. *See Lee*, 463 F.3d at 770.

### 1. The Secretary Fails to Rebut Plaintiffs' Claim That the Signature Requirement Is Severely Burdensome as Applied in Combination With the Other Challenged Provisions.

Plaintiffs have presented affirmative and uncontested evidence that the Signature Requirement falls on the severe end of the scale, both in comparison with other state's requirements and due to its stifling effect on new partisan and independent candidacies. (ECF No. 61 at 19-20.) The Secretary makes no attempt to rebut this evidence but asserts that the Signature Requirement is not "unduly burdensome" because it is "less than" requirements upheld in other cases. (ECF No. 65 at 19.) As the Seventh Circuit has recognized, however, it is "difficult to rely heavily on precedent in evaluating such restrictions, because there is great variance among the states'

schemes." *Nader v. Keith*, 385 F.3d 729, 735 (7th Cir. 2004). The Secretary's misplaced reliance on past cases here proves the point.

The Secretary purports to rely on *Jenness* to demonstrate that the Signature Requirement (as applied in isolation) "does not freeze the status quo," (ECF No. 65 at 20), but as Plaintiffs have explained, that case supports Plaintiffs' position, not the Secretary's. In *Jenness*, candidates had complied with Georgia's signature requirement in each of the two preceding elections. *See Jenness*, 403 U.S. at 439. Here, by contrast, it is uncontested that no statewide candidate has complied with the Signature Requirement in 23 years and counting. (SMF #1.)

Moreover, the Secretary's assertion that "write-in candidacy is an option, and so is nomination by a party that already has ballot access" is immaterial. The Supreme Court has expressly concluded that a write-in candidacy "is not an adequate substitute for having the candidate's name appear on the printed ballot." *Anderson*, 460 U.S. at 799 n.26 (citation omitted). The Court has reached the same conclusion with respect to requirements that would compel a candidate to change affiliation to qualify for the ballot. *See Storer*, 415 U.S. at 745 ("[T]he political party and the independent candidate approaches to political activity are entirely different and neither is a satisfactory substitute for the other.").

The Secretary's citation to *Storer* is similarly misplaced. In *Storer*, the Supreme Court found that the evidentiary record was insufficient to determine whether the signature requirement challenged in that case was severely burdensome, and therefore remanded for further proceedings in the district court. *See Storer*, 415 U.S. at 738-740. Here, by contrast, Plaintiffs have presented affirmative and uncontested evidence that the Challenged Provisions are severely burdensome under the "past experience" test that *Storer* itself announced. *See id.*, at 742. The uncontested evidence also demonstrates, unlike *Storer*, that the cost of complying with the Challenged

Provisions now approaches $500,000 or more. *Storer*, like *Jenness*, therefore supports Plaintiffs' position, not the Secretary's.

Finally, the Secretary also fails to support his assertion that the Signature Requirement "advances compelling state interests." (ECF No. 65 at 21.) The Secretary cites no facts in support of this assertion, and the only "evidence" he cites is paragraph 17 of the Bonnet affidavit, which is nothing more than a list of asserted state interests. (ECF No. 65 at 21.) Additionally, the Secretary makes no attempt to show that the Signature Requirement is sufficiently tailored to further any of those interests, *Burdick*, 504 U.S. at 434, nor to rebut Plaintiffs' evidence demonstrating that it is not. (ECF No. 61 at 27-28.)

**2. The Secretary Fails to Rebut Plaintiffs' Claim That the Filing Deadline Is Severely Burdensome as Applied in Combination With the Other Challenged Provisions.**

The Secretary's attempt to defend the Filing Deadline boils down to the assertion that Indiana's state and county-level elections officials "need time" to perform their regulatory duties. (ECF No. 65 at 22.) Even if this assertion were supported by admissible evidence – and it is not – it would be equally true of any deadline whatsoever. The Secretary thus makes no attempt to demonstrate that the Filing Deadline is sufficiently tailored advance the interests asserted, nor to rebut Plaintiffs' evidence demonstrating that it is not. (ECF No. 61 at 28.) The Secretary does not submit any evidence to support his assertion that the Filing Deadline is "necessary" because Indiana needs "four months before the election" to fulfill its regulatory duties. (ECF No. 65 at 21, 23.) The Secretary also fails to address Plaintiffs' evidence demonstrating that Indiana's early Filing Deadline exacerbates the burden imposed by its high Signature Requirement. (Buchanan Decl. ¶¶ 6, 10; Kafoury Decl. ¶¶ 7, 14; Stein Decl. ¶¶ 6-7; Verney Decl. ¶¶ 12, 19); *see Graveline*, 992 F.3d at 530, 545-546 (holding Michigan's June 19th deadline unconstitutional as applied in combination with its 30,000-signature requirement).

**3.    The Secretary Fails to Rebut Plaintiffs' Claim That the Petitioning Procedure Is Severely Burdensome as Applied in Combination With the Other Challenged Provisions.**

The uncontested facts and evidence are especially damning with respect to the Petitioning Procedure. The record evidence demonstrates that the Petitioning Procedure was adopted in 1889 and has not been updated or improved in the 134 years since, even though the Signature Requirement has increased by many orders of magnitude in that time. It also demonstrates that the Petitioning Procedure is ill-suited as a means of demonstrating voter support, because it requires candidates to exceed the Signature Requirement by approximately 50 percent to ensure they comply with it. Further, it is undisputed that the Petitioning Procedure is now so burdensome that volunteer efforts cannot succeed at the statewide level, (SMF #14), and that as a result, the cost of complying with the Challenged Provisions approaches $500,000 or more. (SMF #11.)

The Secretary has precious little to say in response to these undisputed facts. He simply asserts that candidates have complied with the Challenged Provisions in the last 130 years, (ECF No. 65 at 24), but does not and cannot dispute that no statewide candidate has done so in 23 years and counting. The Secretary also asserts that "[i]t is not the State's responsibility" to adopt a procedure that is sufficiently tailored to enable Plaintiffs to comply with the Challenged Provisions, (ECF No. 65 at 24), but that is incorrect. *See Burdick*, 504 U.S. at 434; *see also*, *e.g.*, *Krislov v. Rednour*, 226 F.3d 851, 863 (7th Cir. 2000) (striking down ballot access requirement on the ground that "the 'fit' between the end to be served by the statute and the means selected to achieve it is not particularly tight, as the provision potentially excludes candidates who have support among the electorate, or who might have support if they could get out their message."). In *Krislov*, the Seventh Circuit was especially concerned that "potential office seekers lacking both personal wealth and affluent backers are in every practical sense precluded from [the ballot] no

matter how qualified they might be, and no matter how broad or enthusiastic their popular support." *Id.*, at 864. The Challenged Provisions implicate the same concern.

Finally, the Secretary's reliance on *Storer* is once again misplaced. According to the Secretary, "the collection of less than 60,000 signatures is not a severe burden to a party if it has a substantial modicum of support." (ECF No. 65 at 25 (citing *Storer*, 415 U.S. at 740).) As Plaintiffs have explained, however, *Storer* made no finding as to the severity of the burden imposed there, but remanded for further proceedings to address the issue. *Storer*, 415 U.S. at 738-740. Furthermore, the record in *Storer*, unlike the record here, did not include uncontested evidence that it would cost $500,000 or more to comply with the statutes under review. The Secretary thus fails to provide any basis in fact or law for his assertion that the burden imposed by the Petitioning Procedure is "justified" by the litany of interests he asserts, much less that the procedure is "clearly tailored" to serve those interests. (ECF No. 65 at 25.)

### 4. The Secretary Fails to Rebut Plaintiffs' Claim That the Vote Test Is Severely Burdensome as Applied in Combination With the Other Challenged Provisions.

The Secretary's discussion of the Vote Test largely fails to respond to the basis for Plaintiffs' claims. The Secretary concedes, for example, that the Vote Test makes it impossible to form a new political party and retain ballot access in presidential election years, but asserts no interest that this categorical prohibition serves. (ECF No. 65 at 25-26.) And the Secretary completely disregards Plaintiffs' claim that the Vote Test categorically prohibits independents from retaining ballot access. The explanation for the Secretary's omission is obvious: no state interest is furthered by either categorical prohibition.

Even if it were true that tying the Vote Test to the election for Secretary of State results in a lower requirement than tying it to the election for President, as the Secretary asserts, (ECF No. 65 at 26), that still does not justify Indiana's failure to adopt *any* vote test that applies in presidential

election years. *See Crawford*, 553 U.S. at 191. No state interest is served by its failure to do so. Similarly, the Secretary's unsupported assertion that the election for Secretary of State is "an excellent candidate for measuring actual support for a political party," (ECF No. 65 at 26) – even if true – does not justify the Vote Test's categorical prohibition against a new party demonstrating that support in presidential election cycles. And the Secretary conspicuously fails to cite any facts or evidence to support the conclusion that it does.

Finally, the Secretary disregards Plaintiffs' evidence demonstrating that the Vote Test's exclusive criterion for support – the percentage of votes received for Secretary of State – distorts the strategic and political priorities of both unqualified parties like INGP and qualified parties like LPIN. The Secretary thus fails to assert any state interest that justifies the Vote Test, or to show that the Vote Test is sufficiently tailored to serve such an interest.

**5.   The Secretary Fails to Rebut Plaintiffs' Claim That the Challenged Provisions Impose Unequal Burdens on Independents and Minor Parties.**

The Secretary's discussion of Plaintiffs' Equal Protection claims is also non-responsive. Plaintiffs have asserted the factual and legal basis for those claims, (ECF No. 61 at 23-27); *see supra* at Part I.B), and the Secretary fails to address Plaintiffs' arguments. Instead, the Secretary discusses *Jenness* at length and asserts that "[t]he same is true here." (ECF No. 65 at 28.) But *Jenness* did not address the Equal Protection claims that Plaintiffs assert here and it does not dispose of them. Furthermore, the Secretary's entire discussion of Plaintiff' Equal Protection claims is unsupported by citation to a single fact in the record. (ECF No. 65 at 27-29.) The Secretary's assertions, untethered to either facts or evidence in the record, are insufficient to defeat Plaintiffs' claims. *See Lucas*, 367 F.3d at 726 (citation omitted).

**6.   The Secretary Fails to Rebut Plaintiffs' Claim That the Challenged Provisions Impose an Insurmountable Financial Barrier to Plaintiffs' Participation in Indiana's Electoral Process.**

After attempting to defend each of the Challenged Provisions as applied in isolation, the Secretary asserts in passing that, as applied in combination, they do not "preclude" Plaintiffs from participating in Indiana's electoral process. (ECF No. 65 at 30.) Once again, however, the Secretary fails to address the uncontested facts and evidence demonstrating that they do. The Secretary simply asserts, without citation, that the approximately $500,000 cost of complying with the Challenged Provisions is "not relevant" to the analysis of their constitutionality. (ECF No. 65 at 30.) The Seventh Circuit disagrees. *See Krislov*, 226 F.3d at 860 ("The uncontested record indicates that their ballot access took a lot of time, money and people, which cannot be characterized as minimally burdensome."); *see also Graveline*, 992 F.3d at 540-541 (relying on evidence demonstrating that petition drives are "arduous, time-consuming and costly" to strike down Michigan's ballot access requirements). Here, the uncontroverted evidence demonstrates that the cost of conducting a petition drive functions as a *de facto* financial barrier to entry. The Secretary's unsupported assertion that such evidence is not relevant cannot defeat Plaintiffs' claims. *See Lucas*, 367 F.3d at 726 (citation omitted).

### C. The Secretary Fails to Rebut Plaintiffs' Evidence That Less Burdensome Alternatives Are Available to Protect Indiana's Legitimate Regulatory Interests.

Contrary to the Secretary's contention, Plaintiffs do not argue that Indiana is required to consider "hypothetical alternatives" to the Challenged Provisions. (ECF No. 65 at 31.) Rather, Plaintiffs have presented affirmative evidence demonstrating that the Challenged Provisions are not narrowly tailored, that less burdensome alternatives actually exist, and that these alternatives are sufficient to protect Indiana's legitimate regulatory interests. (ECF No. 61 at 27-31.) While the Secretary insists that "Indiana's regulatory scheme functions as a machine" and predicts that "changing its parts could drastically impact the State's legitimate state interests," (ECF No. 65 at

31), the Secretary cites no facts or evidence to support such speculation. The Court need not credit the Secretary's hypothetical concerns.

### III. The Secretary's Motion Should Be Denied Because It Is Facially Deficient and Cannot Support Judgment as a Matter of Law.

The Secretary fails to support his own Motion for the same reasons he fails to defeat Plaintiffs'. The Secretary's assertions are unsupported by citation to facts or admissible evidence and cannot support judgment as a matter of law. *See Lucas*, 367 F.3d at 726. And to the extent that the Secretary makes legal arguments, they lack merit. The Secretary's Motion should be denied.

#### A. The Secretary Cannot Carry His Burden Because His Motion Is Unsupported by Material Facts or Admissible Evidence.

It is black letter law that "[a] party seeking summary judgment must file and serve a supporting brief … containing the facts: (1) that are potentially determinative of the motion; and (2) as to which the movant contends there is no genuine issue." S.D. Ind. L.R. 56-1(a). Here, the Secretary seeks summary judgment but expressly declines to comply with that directive. (ECF No. 65 at 8.) The Secretary fails to assert a single material fact in support of his Motion. (*Id.*)

When a party opposes summary judgment, the party ordinarily "must set forth *specific* facts showing there is a genuine issue for trial," and if the party fails to do so, "summary judgment, if appropriate, *shall* be entered against the adverse party." *Waldridge v. American Hoechst Corp.*, 24 F. 3d 918, 920 (7th Cir. 1994) (quoting Fed. R. Civ. P. 56(e)) (emphasis added by Court). That is because a court deciding summary judgment has "one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* (citation omitted). The parties therefore have a "concomitant burden to identify the evidence that will facilitate this assessment." *Id.* Accordingly, when a non-moving party fails to "submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts," the Seventh Circuit has "repeatedly … sustain[ed] the entry of summary judgment"

against that party. *Id.* at 922 (collecting cases).

The Seventh Circuit has also recognized, however, that district courts have discretion to overlook a party's "transgression of the local rules." *Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013) (citations and brackets omitted). For example, in cases such as this, where Plaintiffs "bear[] the ultimate burden of persuasion," the Seventh Circuit has excused a defendant's failure to submit a statement of material facts as required by Local Rule 56-1. *See id.* at 1168-69. But even in such a case the Secretary, as the moving party, has the initial burden "to inform the district court why a trial is not necessary," *id.* at 1168, and he must do so in one of two ways. The Secretary must either submit "affirmative evidence that negates an essential element of [Plaintiffs'] claim[s]," or he must demonstrate that Plaintiffs' "evidence [was] insufficient to establish an essential element of [Plaintiffs'] claim[s]." *Id.* at 1169 (citation omitted). The Secretary fails to carry his burden under either prong of the *Modrowski* test.

### 1. The Secretary Fails to Submit Affirmative Evidence That Negates an Essential Element of Plaintiffs' Claims.

If the Secretary believes that his Motion negates an essential element of Plaintiffs' claims, it is unclear how. The Secretary does not even cite *Modrowski* or any other case that applies the same test, much less does he attempt to demonstrate that his Motion satisfies it. Nonetheless, to do so the Secretary was required to submit evidence sufficient to negate Plaintiffs' claims that the Challenged Provisions impose "severe burdens" on Plaintiffs that "are not justified by any legitimate or compelling state interest" and that they "cause injury to" Plaintiffs' right to Equal Protection. (ECF No. 1 at 25-26, ¶¶ 96, 99.) The scant evidence the Secretary submitted is woefully inadequate to that task.

In the entire "Argument" section of his Motion, the Secretary cites to just one piece of evidence: the inadmissible affidavit of Mr. Bonnet. (ECF No. 65 at 12-32; ECF No. 64-1 at 1-6.)

The first two pages of that affidavit do nothing more than identify Mr. Bonnet and recite provisions of the Indiana Election Code. (ECF No. 64-1 at 1-2.) Further, despite Mr. Bonnet's statement that he has "personal knowledge" of the matters to which he attests, (ECF. No. 64-1 at 1, ¶ 1), the remaining three pages of his affidavit contain multiple statements that are plainly inadmissible as matters of opinion or conclusions of law – not statements of fact. For example, Mr. Bonnet avers:

> "The Challenged Provisions do not create unequal burdens and nothing in the Secretary's discovery responses supports an allegation of unequal burdens." (ECF No. 64-1 at 3, ¶ 10);

> "If a candidate or a party does not have the support of the electorate, that candidate or party will have difficulty achieving the Signature Requirement." (ECF No. 64-1 at 3, ¶ 16);

> "As the Indiana General Assembly has decided the 2% Signature Requirement is needed to protect the State's interest, a lower signature requirement would not suffice." (ECF No. 64-1 at 4, ¶ 18);

> States have an inherent interest in requiring an early filing deadline…." (ECF No. 64-1 at 4, ¶ 19);

> "The Challenged Provisions … when taken as a whole, do not limit the political participation of voters, candidates, or political parties in Indiana's electoral process." (ECF No. 64-1 at 4, ¶ 21).

These statements may reflect Mr. Bonnet's opinions or conclusions in his capacity as the Secretary's General Counsel, (ECF No. 64-1 at 1, ¶ 2), but they are inadmissible to prove the truth of the matters asserted. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). The Secretary did not identify Mr. Bonnet as an expert witness (or disclose him at all) and his opinions or conclusions are immaterial. *See id.*

Furthermore, as previously explained, the single material fact to which Mr. Bonnet attests – that when Indiana quadrupled its signature requirement in 1980, the "change was implemented, in part, to reduce the confusion caused by the 1980 election with eight presidential candidates on

the ballot," (ECF No. 64-1 at 3, ¶ 14) – cannot possibly be true. The legislation was enacted eight full months before the 1980 general election. *See Hall*, 766 F.2d at 1172.

Even if every statement in Mr. Bonnet's affidavit were admissible – and they are not – it would do nothing to negate any element of Plaintiffs' claims. The affidavit is virtually silent, for example, with respect to the central issue in this case – Plaintiffs' claim that the Challenged Provisions impose "severe" burdens. *See Stone*, 750 F.3d at 681. The only statements in Mr. Bonnet's affidavit that arguably address this claim are the following:

> "The Challenged Provisions … when taken as a whole, do not limit the political participation of voters, candidates, or political parties in Indiana's electoral process." (ECF No. 64-1 at 4, ¶ 21).

> "Over the course of the last 130 years, politicians have used the Petitioning Procedure to qualify for ballot access in both state and local elections across Indiana." (ECF No. 64-1 at 5, ¶ 26).

The first statement is nothing more than a conclusory assertion that the Challenged Provisions are not burdensome. But the Seventh Circuit has repeatedly held that "conclusory statements, not grounded in specific facts, are not sufficient to avoid summary judgment." *Lucas*, 367 F.3d at 726. Mr. Bonnet's conclusion that the Challenged Provisions are not burdensome, which is unsupported by any specific concrete facts, does not negate Plaintiffs' claim that the burdens are severe, which is amply supported by competent and detailed evidence. *See id*.

Mr. Bonnet's statement that candidates and parties have complied with the Petitioning Procedure in the past 130 years also fails to negate Plaintiffs' claim that the Challenged Provisions are severely burdensome as presently applied. That claim is grounded in the undisputed facts that no statewide petition drive has succeeded in the last 23 years, that volunteer petition drives do not succeed because the resources required are so excessive, and that a successful statewide petition drive costs in excess of $500,000 at present market rates, among others. Mr. Bonnet's affidavit does not even acknowledge these facts, much less negate them – nor could it, because the Secretary

expressly concedes their truth. (ECF No. 65 at 8.)

Mr. Bonnet's affidavit likewise fails to negate Plaintiffs' claim that no compelling or legitimate state interest justifies the severe burdens that the Challenged Provisions impose. As previously explained, Mr. Bonnet's affidavit contains no facts that demonstrate the Secretary's laundry list of asserted state interests is even implicated, much less that the Challenged Provisions are sufficiently tailored to serve them. It simply lists those interests. (ECF No. 64-1 at 4-5.)

Federal Courts have repeatedly concluded that states may not defend ballot access requirements by "relying … on generalized and hypothetical interests identified in other cases." *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 593 (6th Cir. 2006); *see also Libertarian Party of Arkansas v. Thurston*, 962 F.3d 390, 403 (8th Cir. 2020); *Reform Party of Allegheny Cty. v. Allegheny Cty. Dept. of Elections*, 174 F.3d 305, 315 (3rd Cir. 1999); *Fulani v. Krivanek*, 973 F.2d 1539, 1546 (11th Cir. 1992). The Secretary's Motion typifies this improper approach. It asserts generic state interests and makes no attempt to connect them to the facts of this case.

Mr. Bonnet's affidavit fails to supply the missing connection. With respect to the Signature Requirement, for example, Mr. Bonnet avers that the Indiana General Assembly "has decided [it] is needed to protect the State's interest," then summarily concludes that "a lower signature requirement would not suffice." (ECF No. 64-1 at 4, ¶ 18.) This assertion fails to carry the Secretary's burden on multiple grounds. It does not identify any precise state interest whatsoever, much less show how the Signature Requirement furthers that interest. *See Gill*, 962 F.3d at 364. It presumes that the Signature Requirement is necessary because the Indiana General Assembly has decided it is, even though legislatures can and do enact unconstitutional signature requirements. *See*, *e.g.*, *Graveline*, 992 F.3d at 529, 539 n.3 (6th Cir. 2021) (holding Michigan's 30,000-signature requirement – equivalent to 1 percent of the total vote for governor – unconstitutional). And it does not rebut Plaintiffs' evidence demonstrating that the Signature Requirement is far more restrictive

than necessary to further any legitimate state interest. It is, in short, a "conclusory statement[], not grounded in specific facts, [that is] not sufficient to avoid summary judgment." *Lucas*, 367 F.3d at 726.

Mr. Bonnet's statements relating to the Filing Deadline are similarly deficient. Mr. Bonnet avers, for example, that Indiana needs "adequate time to organize its electoral proceedings," (ECF No. 64-1 at 4, ¶ 19), and that Indiana's county and state-level entities "need time" to perform their regulatory duties. (ECF No. 64-1 at 5, ¶ 25.) But these statements would be equally true of any filing deadline. In no way do they negate Plaintiffs' claim that the Filing Deadline is unnecessarily early, nor do they rebut the evidence supporting that claim.

Finally, Mr. Bonnet offers no evidence whatsoever that could negate Plaintiffs' Equal Protection claims. He merely asserts that "[t]he Challenged Provisions do not create unequal burdens and nothing in the Secretary's discovery responses supports an allegation of unequal burdens." (ECF No. 64-1 at 3, ¶ 10.) The Secretary's burden, however, is not to demonstrate that his evidence – to the extent it exists – fails to establish an Equal Protection violation, but to demonstrate that it negates an essential element of Plaintiffs' Equal Protection claims. *See Modrowski*, 712 F.3d at 1169. The Secretary cannot carry that burden by summarily denying that the Challenged Provisions impose unequal burdens. *See Lucas*, 367 F.3d at 726.

In sum, Mr. Bonnet's affidavit – even if admissible – fails to negate any element of Plaintiffs' claims, and it is the only affirmative evidence the Secretary offers in support of his Motion. Therefore, the Secretary cannot prevail under the first prong of the *Modrowski* test.

### 2.   The Secretary Fails to Demonstrate That Plaintiffs' Evidence Is Insufficient to Establish an Essential Element of Their Claims.

The Secretary cannot prevail under the second prong of the *Modrowski* test, either, because he makes no attempt to demonstrate that Plaintiffs' evidence is insufficient to establish an essential

element of their claims. Plaintiffs submitted 17 declarations in support of their Motion. (ECF No. 60-1 at 1-2.) The Secretary has chosen to disregard this evidence entirely, with a single exception. Simply put, the Secretary cannot demonstrate that Plaintiffs' evidence is insufficient to support their claims without addressing Plaintiffs' evidence.

The only piece of Plaintiffs' evidence the Secretary addresses is the declaration submitted by Mitchell V. Harper, a current and long-standing member of the Republican Party who served in the Indiana State House when the legislation that quadrupled the Signature Requirement and the Vote Test was enacted. (ECF No. 65 at 15-16; ECF No. 60-4 at 1-2, ¶¶ 3, 4, 6, 9.) Mr. Harper testifies that he opposed the legislation because he believed it "raised serious constitutional concerns" as applied to candidates for statewide, congressional and legislative offices. (ECF No. 60-4 at 4, ¶ 22.) During the House debate on the legislation, Mr. Harper and another Representative spoke against it as drafted, while the legislation's sponsor spoke in favor of it. (ECF No. 60-4 at 4, ¶¶ 22-23.) To the best of Mr. Harper's recollection, no other representative participated in the debate. (ECF No. 60-4 at 4, ¶ 23.) Mr. Harper states that the legislation "was enacted and signed into law virtually without debate," and that despite the opposition he and his colleague raised, he "never heard any Representative mention a regulatory interest that the legislation was intended to protect or identify any reason why it should apply to statewide, congressional and legislative races." (ECF No. 60-4 at 5, ¶ 29.)

Mr. Harper's declaration supports Plaintiffs' claims because it helps prove that the legislation quadrupling Indiana's Signature Requirement and Vote Test was unnecessary to protect any legitimate state interest and that it was never intended to do so. (ECF No. 60-4 at 5, ¶ 29.) It is therefore probative of the "legitimacy and strength" of the interests the Secretary asserts as justification for the Challenged Provisions, as well as "the extent to which those interests make it necessary to burden [Plaintiffs'] rights." *Gill*, 962 F.3d at 364 (citation omitted). In particular, Mr.

Harper's declaration tends to refute the Secretary's demonstrably false assertion that Indiana quadrupled the Signature Requirement and Vote Test due to a concern over unsubstantiated "voter confusion" during the 1980 presidential election. (ECF No. 65 at 16.)

The Secretary's attack on Mr. Harper's evidence boils down to his assertion that "one legislator's opinion that no compelling state interest was being protected is irrelevant." (ECF No. 65 at 16.) This mischaracterizes Mr. Harper's evidence. As the above-quoted passages confirm, Mr. Harper offers factual testimony relating to the process by which the Signature Requirement and Vote Test were enacted, based on his direct participation in that process and as a firsthand witness thereto. Plaintiffs properly rely on Mr. Harper's evidence to prove the truth of the facts he asserts, and the Secretary's attempt to rebut that evidence by mischaracterizing it as opinion fails.

Furthermore, while Mr. Harper's declaration supports Plaintiffs' claims, it is by no means the only evidence on which they rely. It is not even the only evidence that demonstrates the Challenged Provisions are more restrictive than necessary to protect any legitimate state interest. Therefore, even if the Secretary were able to rebut Mr. Harper's evidence – and he cannot – the Secretary still could not carry his burden under *Modrowski* because he does not even acknowledge the other 16 declarations on which Plaintiffs rely, much less attempt to demonstrate that this evidence is insufficient to prove an essential element of Plaintiffs' claims. *See Modrowski*, 712 F.3d at 1169. The Secretary cannot prevail under either prong of the *Modrowski* test.

\* \* \*

The Secretary's clear failure to satisfy either prong of the *Modrowski* standard cannot be overlooked or excused as a mere technical defect in his Motion. At the "put up or shut up moment" in this lawsuit, the Secretary was obliged to present the Court with a factual basis on which it could grant judgment as a matter of law in his favor, *Johnson*, 325 F.3d at 901 (citation omitted), and the Secretary made no attempt to do so. He asserted no facts and almost no admissible evidence in

support of his Motion. (ECF No. 65 at 4; ECF No. 64 at 3, ¶ 10.) He expressly conceded all material facts asserted by Plaintiffs but declined to address them. (ECF No. 65 at 4; ECF No. 64 at 3, ¶ 10.) And he disregarded almost all the evidence Plaintiffs submitted in support of their motion for summary judgment. The Secretary's Motion is facially deficient and cannot support judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment should be granted as to Count I and Count II of the Complaint and the Secretary's Cross-Motion for Summary Judgment should be denied.

DATED: July 19, 2023                    Respectfully submitted,

                                        */s/ Oliver B. Hall*

                                        _____

                                        **OLIVER B. HALL**
                                        (Admitted PHV)
                                        CENTER FOR COMPETITIVE DEMOCRACY
                                        P.O. Box 21090
                                        Washington, DC 20009
                                        (202) 248-9294
                                        oliverhall@competitivedemocracy.org

                                        **MARK R. BROWN**
                                        (Admitted PHV)
                                        303 E. Broad Street
                                        Columbus, OH 43215
                                        614-236-6590
                                        Mbrown@law.capital.edu

                                        **WILLIAM P. TEDARDS, JR.**
                                        (Admitted PHV)
                                        1101 30th Street NW, Suite 500
                                        Washington, DC 20007
                                        (202) 797-9135
                                        BT@tedards.net

                                        Counsel for Plaintiffs